```
 1                    UNITED STATES OF AMERICA
                    UNITED STATES DISTRICT COURT
 2                   MIDDLE DISTRICT OF FLORIDA
                          -   -   -
 3                 HONORABLE STEVEN D. MERRYDAY
              UNITED STATES DISTRICT JUDGE PRESIDING
 4

 5   UNITED STATES OF AMERICA,        )
                                      )
 6                   PLAINTIFF,       )
                                      )
 7             VS.                    )8:18-cr-192-SDM-CPT
                                      )
 8   BRYAN GOMEZ NEVAREZ,             )
                                      )
 9 _____DEFENDANT._____)

10

11
                        SENTENCING HEARING
12           REPORTER'S TRANSCRIPT OF PROCEEDINGS
                      JANUARY 22, 2019
13                    TAMPA, FLORIDA

14

15

16

17

18

19   SHARON A. MILLER, CSR, RPR, CRR, FCRR
     IL CSR 084-2617
20   FEDERAL OFFICIAL COURT REPORTER
     801 N. FLORIDA AVENUE, SUITE 13A
21   TAMPA, FLORIDA 33602

22

23

24

25
```

1   APPEARANCES OF COUNSEL:

2   ON BEHALF OF PLAINTIFF:

3           UNITED STATES ATTORNEY'S OFFICE
            BY:  MR. CARLTON CURTISS GAMMONS
4           400 N. Tampa Street
            Tampa, FL  33602
5           (813)274-6000
            carlton.gammons@usdoj.gov
6

7

8   ON BEHALF OF DEFENDANT:

9
            ESCOBAR & ASSOCIATES, PA
10          BY:  MR. DINO M. MICHAELS
            2917 W. Kennedy Boulevard, Suite 100
11          Tampa, Florida 33609
            (813) 875-5100
12          dmichaels@escobarlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

1            THE COURT:  Perhaps Counsel and the Defendant

2    and interpreter will step forward to the clerk's table

3    and everyone else may be seated.  Good morning.  We

4    are together in case 18-cr-192, United States of

5    America versus Bryan Gomez Nevarez.  I note the

6    presence of an interpreter.  I would ask the Deputy

7    Clerk to administer to him the oath of our

8    interpreter.

9                      (Interpreter sworn.)

10           THE INTERPRETER:  James Plunkett, Spanish

11   interpreter.  Good morning, Your Honor.

12           THE COURT:  Good morning, Mr. Plunkett.  Thank

13   you for being with us.  Who speaks for the United

14   States.

15           MR. GAMMONS:  Good morning, Your Honor.

16   Carlton Gammons for the United States.

17           THE COURT:  Good morning, Mr. Gammons.  Who

18   speaks for the defense?

19           MR. MICHAELS:  Dino Michaels on behalf of

20   Bryan Gomez Nevarez.  I woke up this morning and I

21   have some kind of a congestion so my hearing is a

22   little off and my voice may be a little too loud at

23   times, so in advance I apologize.

24           THE COURT:  Your voice is fine right this

25   minute, so thank you very much and I hope you get

1    feeling better very soon.  You're not the only person

2    who has had that problem recently.

3              MR. MICHAELS:  I know that.

4              THE COURT:  You are Bryan Gomez Nevarez?

5              THE DEFENDANT:  Correct, Your Honor.

6              THE COURT:  Thank you.  Mr. Gomez, on

7    October 26th of 2018 you pleaded guilty to Count One

8    of an indictment.  Count One charges you with

9    conspiracy.  In particular, Count One charges a

10   conspiracy to possess with the intent to distribute

11   five kilograms or more of cocaine in violation of

12   Section 841 of Title 21 of the United States Code.  I

13   earlier entered an order that accepts your plea of

14   guilty and adjudges you guilty of Count One, the

15   conspiracy charged in Count One, so as of the date of

16   that adjudication your guilt has been established and

17   it remains to determine your sentence.

18             As I know Mr. Michaels has explained, I will

19   determine your sentence by first determining an

20   advisory sentence under the United States Sentencing

21   Guidelines and by next inviting both the United States

22   and the defense to direct my attention to any matters

23   including those that appear at 18 U.S.C. 3553(a) that

24   I should consider in arriving at a final and

25   reasonable sentence in accord with applicable law.

1          I begin by asking Mr. Gammons if he's had an

2     opportunity on behalf of the United States to review

3     and evaluate the presentence report, and, if so,

4     whether the United States objects either to the

5     factual content of the presentence report or to the

6     application of the sentencing guidelines that is

7     recommended by the United States Probation Office.

8          MR. GAMMONS:  Your Honor, I have reviewed the

9     presentence report.  The United States has no

10    objection in either respect.

11         THE COURT:  Mr. Michaels, have you and

12    Mr. Gomez Nevarez had an opportunity together to

13    review and evaluate the presentence report?

14         MR. MICHAELS:  We have, Your Honor.

15         THE COURT:  Mr. Gomez Nevarez, have you seen

16    the presentence report and discussed it with

17    Mr. Michaels?

18         THE DEFENDANT:  Correct, Your Honor.

19         THE COURT:  First, Mr. Michaels, is there any

20    objection to the factual content of the presentence

21    report?

22         MR. MICHAELS:  No, Your Honor.

23         THE COURT:  Then the factual content is

24    adopted without objection.  Similarly, is there an

25    objection for the purpose of the advisory guideline

1    calculation to the offense level of 35 and the

2    Criminal History Category of I as recommended by the

3    probation office?

4           MR. MICHAELS:  No, Your Honor.

5           THE COURT:  The Court adopts without objection

6    the offense level of 35 and the Criminal History

7    Category I.  Mr. Gammons, is there a motion on behalf

8    of this Defendant under Section 5K1 or otherwise?

9           MR. GAMMONS:  No, Your Honor.

10          THE COURT:  In that case, Mr. Michaels, I'll

11   recognize you to advance any matters in mitigation and

12   any matter under 3553 after which I'll ask Mr. Gomez

13   Nevarez in allocution.  I did receive and review your

14   sentencing memorandum.  I did receive and review with

15   some assistance the letters that were attached from

16   friends and family members both in the United States

17   and in Puerto Rico, so I'll recognize you now.

18          MR. MICHAELS:  Thank you, Your Honor.  I'm not

19   one of these lawyers that's going to go over with the

20   Court.  I know the Court has reviewed and read it.

21          THE COURT:  I do, but don't be hesitant to say

22   what you need to say.  I'm patient and we'll listen

23   and the ones according to you are important, because

24   I've seen it.  I didn't say that to discourage your

25   presentation, just to assure you that I had read that

1    material.

2          MR. MICHAELS:  I said it in part to see what

3    the Court was going to say.  I said it in part to see

4    what the Court was going to say.  Sometimes, you know,

5    once we start saying things, I've been in a position

6    where the Court said, listen, I already looked at all

7    of that, so I do appreciate it.

8          THE COURT:  I never said that.

9          MR. MICHAELS:  I know you never had.  Now, I

10   can tell the Court that Mr. Gomez Nevarez has several

11   family members in the audience.

12         THE COURT:  I saw that.

13         MR. MICHAELS:  He has his brother here.  He

14   has his oldest child.  He has the mother of his oldest

15   child he's no longer with.  He has a significant other

16   who is here who works in that business, the lawn care

17   business with him.  His mother is here.  His youngest

18   child was here but, of course, we didn't want a

19   five-year old to come into court to see his father

20   getting sentenced so he's out in the hallway with

21   another family member.

22         As the Court can see from the presentence

23   investigation report, that Mr. Nevarez Gomez has

24   absolutely zero prior record, not just a criminal

25   Category I.  Zero.  He's never been arrested before,

1    never been in trouble as a juvenile.  From all that I

2    see he's never been in the principal's office as a

3    kid.  He's always been someone who respected law and

4    order.  He comes from a middle class family and so he

5    has plenty of family support.  He worked for his

6    father in a business as a messenger.  It kind of went

7    south when the hurricane hit and that's kind of what

8    brought him to Florida and what got him kind of in a

9    position to make a really poor decision in this case

10   for a law-abiding kid with great family support to get

11   involved in the business of having cocaine shipped

12   over here by the U. S. mail and selling it.  Frankly

13   his part of it was a thousand a kilo.  He's getting it

14   shipped and he's supplying it to Jesus Rodriguez.

15          I know this Court knows about the conspiracy,

16   but I think the Court sentenced already eight people

17   in this conspiracy, so the Court knows the scope of

18   it.  And so Mr. Gomez Nevarez is one of the suppliers

19   that is identified through Jesus Rodriguez.

20   Essentially that's the scheme of things, so he gets

21   involved in this business of dealing in cocaine, but

22   at the same time what he does is he starts and

23   incorporates a company doing lawn care in the spring

24   of the year he got arrested.

25          Now, since he's been released on pretrial

1    release, he's done nothing but grow the business.  His

2    significant other and himself go and do these lawns.

3    They built the business up from about 49 customers to

4    over 84 now.  He was working yesterday afternoon even.

5    I have logs of where you see the yards that he's

6    cutting and how often he's cutting them.

7              THE COURT:  Did they buy an ongoing business?

8              MR. MICHAELS:  Pardon me, Your Honor?

9              THE COURT:  Did they buy an ongoing business?

10   Did they buy an ongoing business?

11             MR. MICHAELS:  They bought --  Yes.  He bought

12   somebody's route and essentially amplified what was

13   being done by the other person getting more business.

14   He incorporated, started a bank account in the

15   business, so he's done it in a way that I can tell the

16   Court that when this individual gets out of prison, he

17   has something to fall back on, maybe not that business

18   because it might not be going by the time he gets out.

19   His wife -- it's kind of a big truck.  He does tree

20   cutting as well.  She apparently is not real

21   comfortable driving it.  We don't know if he's going

22   to be able to hire somebody to help her and actually

23   have the business ongoing, so that's a question, but

24   what it tells this Court is this isn't somebody who's

25   likely in the time of desperation to make another bad

1    choice like he made to get him into this mess.  This

2    is somebody who has learned that he has the

3    wherewithal to do something.  He's never been in lawn

4    care before to pick a business that he knows he can do

5    and did and operate it, so that's why that's important

6    when deciding which sentence is sufficient but not

7    greater than necessary for this individual, so he's

8    never been punished before.

9          We're asking the Court for a variance.  It's a

10   little more than a three level variance because three

11   levels puts him at level 32.  The bottom of that is

12   121 months, so we're asking for the minimum mandatory

13   120 months which is significant in a 31-year old's

14   life who's never been in any sort of trouble before.

15   We know what his motivation was.  He's a family man.

16   The letters attest to that.  The letters tell the

17   Court this is somebody who cares for his kids.  His

18   motivation in getting involved in this conspiracy was

19   to provide for his family, to provide for his

20   children, and there's no indication of him living some

21   lavish lifestyle.  He rents a house along with a

22   roommate to help defer costs.  There's no indication

23   that the search warrant was indicated.  They seized

24   about $1400 or so.  There's no indication that they

25   seized any kind of jewelry or any kind of indication

1    that he's living some kind of an affluent lifestyle so

2    he's made a bad choice.  The motivation is honorable.

3    The choice isn't so honorable.  I'm sure he will tell

4    the Court that that's the way he feels about it, and

5    so that's an important aspect of this.

6         When we look at, you know, the characteristics

7    of the Defendant, his nature, that he has family

8    support when he gets out to support him, because,

9    again, we're not looking at somebody that's any

10   indication that's likely to reoffend in this case.

11        We have the issue of the firearm.  Search

12   warrant served, they find a firearm in his home.  The

13   firearm is found within his bedroom which is

14   consistent with someone who is using it for protection

15   of the home.  It's found in the bedroom and it's

16   acknowledged that Mr. Gomez Nevarez had a carry and

17   conceal firearm license.

18        THE COURT:  What difference does that make?

19        MR. MICHAELS:  Well, it makes a difference

20   only when you are looking at the characteristics.  He

21   gets the points, so he's going to get the enhancement,

22   but it makes a difference because we're looking at

23   kind of the circumstances surrounding what got him to

24   that level and, therefore, it's important in the

25   determination of what sentence is sufficient in this

1    case.

2         THE COURT:  What got him to the level was, of

3    course, that he had a firearm and a pretty good bit of

4    cash and cocaine.  He also had .40 caliber ammunition

5    that you sort of wonder where the .40 caliber weapon

6    is, but that's superfluous I suppose and it's

7    certainly not necessary that the firearm be solely for

8    the purpose of defending the cocaine business.

9         MR. MICHAELS:  I understand that.

10        THE COURT:  And it might well not have been.

11   I expect it would have been used for either purpose if

12   someone had attempted to harm his family, probably

13   would have had the weapon available or somebody was

14   going to people who have the firearm somewhere close

15   to them at night, but what they don't have is the

16   scales and the drugs and all of this other stuff,

17   certainly not near the proximity to a five-year-old

18   daughter.

19        MR. MICHAELS:  Your Honor, I'm not here to

20   diminish what he did.  I'm here just kind of to put it

21   into a context to support the request for the variance

22   that we're asking for, and so I ask the Court to

23   consider those points that I've raised.

24        THE COURT:  That's why I asked the question,

25   because you raised the conceal/carry permit in your

```
 1    sentencing memorandum, and I must admit me it struck
 2    me as completely irrelevant.  I don't know anything
 3    about the firearm.  I don't know where he got it.  I
 4    don't know whether it was otherwise a lawful firearm.
 5    I don't assume anything about it, but I just couldn't
 6    understand what the -- he wasn't carrying the firearm
 7    anyway.  It was tucked away in his home so he wasn't
 8    carrying it.  The firearm permit is completely
 9    irrelevant.  I was asking if there was some other
10    reason that that was mitigating.  That didn't occur to
11    me.
12         MR. MICHAELS:  Well, I will say this, that
13    clearly there's a report from probation and pretrial
14    services that he's been compliant --
15         THE COURT:  Yes.
16         MR. MICHAELS:  -- while on release, so that's
17    an indication that he can do well under supervision.
18         THE COURT:  Right.
19         MR. MICHAELS:  For those reasons, I would ask
20    the Court to listen to Mr. Gomez Nevarez's allocution.
21         THE COURT:  I will.
22         MR. MICHAELS:  And we're requesting a variance
23    to the minimum mandatory, which is a significant
24    sentence, of 120 months, 10 years of prison.  I know
25    that Mr. Ramos Burgos in this conspiracy was sentenced
```

1    to 120 months.  I understand that he doesn't have a

2    firearm enhancement.  I get that.  Carrasquillo Perez,

3    he's identified as a source of supply in this.  It

4    looks like he received 120 month sentence, so although

5    I understand we're not talking about two people that

6    are equal, that instructive in that very source of

7    supply that you know perhaps Mr. Gomez Nevarez should

8    be considered on a similar footing and give him that

9    variance.

10         THE COURT:  All right.  Let me just ask a

11    quick question or two.  It's stated in your sentencing

12    memorandum that he bonded out and there's a

13    co-signature on, they call it a property posted as

14    collateral worth at least half.  I'm not sure.  Is

15    that his home?  No, that's a rental home, so it can't

16    be that home.  What piece of property?  Do you know,

17    Mr. Gammons?

18         MR. GAMMONS:  I don't recall offhand, Your

19    Honor.

20         THE COURT:  When he bought this business, did

21    he get a bank loan or did he have enough cash to buy

22    the business?

23         MR. MICHAELS:  He got a loan from his mother.

24         THE COURT:  How much was that?

25         MR. MICHAELS:  $17,000.

1              THE DEFENDANT:  No.

2              MR. MICHAELS:  $13,000, and his mother wrote

3       him a check which she deposited into his account for

4       which he used to buy the business and his mother is

5       here in court if you wish to hear testimony on it,

6       Your Honor.

7              THE COURT:  Mr. Gomez Nevarez, you do have an

8       opportunity to speak on your own behalf this morning.

9       You're not required to say anything, of course.  If

10      you'd like to say something, I'm happy to hear from

11      you.

12             THE DEFENDANT:  Thank you, Your Honor.  I ask

13      to forgive me if I'm not using the proper words.  I --

14      first of all, I want to say that I'm sorry and I thank

15      my attorney for the efforts in defending me, but I

16      accept as fair the sentence that I will receive.  I

17      made a mistake and I am guilty of what I've done and I

18      feel really ashamed because even though I knew what it

19      is to do good, I chose to do what was wrong.  And I

20      want to say it was incredible the work done by

21      everybody involved, the people from probation,

22      everybody, everybody involved in this, and I thank

23      God, really, because God has taught me that, yes, it

24      is possible.  The attorney used the facts about the

25      business and how I make the business grow, and I thank

1    him for doing that effort, but I think that God is who
2    made this possible in me.  I work very hard in the
3    business and I made it grow, yes.
4            THE INTERPRETER:  I asked him to pause.
5            THE DEFENDANT:  So I only want to thank God
6    because he has led me to be a better person, and so I
7    ask -- and even though my attorney has told me it
8    would not be possible and I think it would be
9    impossible to do because I have been running a
10   business and I've been able to make the business grow,
11   I ask, though I don't deserve it, because I did this
12   for my wife and she has worked very hard for the
13   business, and even though right now the season for
14   this type of work is down, business is not good, money
15   is low, and because of this time of the year where
16   business is low, my wife is alone and she would not
17   have the wherewithal to continue with the business.
18   So if it were possible to just get a little more time
19   to be able to help her until the rainy season comes
20   about and the business starts doing well again so she
21   can do that on her own, I would be really thankful.
22   That's all.
23           THE COURT:  All right.  Thank you.
24   Mr. Gammons, what says the United States with respect
25   to a reasonable sentence?

1          MR. GAMMONS:  Thank you, Your Honor.

2     Everything that Mr. Michaels has said about the

3     Defendant is true.  Currently he is working

4     legitimately.  He has no criminal history, but in the

5     span of his I guess the past few months that the Court

6     has been sentencing this case, Mr. Gomez Nevarez was a

7     significant figure involved in the conspiracy.  Other

8     than Manuel Rodriguez, Mr. Gomez Nevarez was the most

9     significant person involved in the conspiracy.  As the

10    Court knows he was arranging kilos of cocaine being

11    transported from Puerto Rico to the United States.

12    He's a drug trafficker.  He's an armed drug

13    trafficker, and the Government believes that 168

14    months is appropriate in this case.

15         A few moments ago Mr. Gomez Nevarez talked

16    about his wife and his child, who are certainly

17    victims of this crime, but there are dozens and dozens

18    and dozens of other people who are victims of the

19    drugs that he was responsible for distributing in our

20    area, so we believe that 168 months is appropriate in

21    this case, Your Honor.  I would ask that Mr. Gomez

22    Nevarez be taken into custody today as I believe it's

23    required by statute.

24         And I'll note another housekeeping matter.  At

25    docket entry 360 is a preliminary order of forfeiture

```
 1      and we ask that that be made final.
 2              THE COURT:  All right.  Thank you.  Sir,
 3      anything further from the United States?
 4              MR. GAMMONS:  No, sir.
 5              THE COURT:  Any reason not to proceed to
 6      sentencing?
 7              MR. GAMMONS:  No, Your Honor.
 8              THE COURT:  Norton had a 5K1?
 9              MR. GAMMONS:  Yes, Your Honor.
10              THE COURT:  That was my recollection.  This is
11      a question that I'm going to ask to you and to the
12      United States and then I'll give the defense an
13      immediate opportunity to respond.  I don't see in the
14      presentence report any statement of facts that this
15      Defendant carried, himself, anything from Puerto Rico
16      to the United States.  That was done otherwise; is
17      that correct?
18              MR. GAMMONS:  That's correct, Your Honor.
19              THE COURT:  But he himself carried from
20      Orlando to Tampa.  I think there are a couple of
21      places in the PSR where he carried from somewhere in
22      Orlando to the address here in Tampa and
23      Mr. Rodriguez, the apartment I believe of David
24      Rodriguez.
25              MR. GAMMONS:  I believe that's correct,
```

1    however, I think most commonly Mr. Rodriguez would

2    travel to the Orlando area to see Mr. Gomez Nevarez.

3              THE COURT:  That's my understanding.  That's

4    typically the way it was done, but there was at least

5    one or two occasions when this Defendant drove to

6    Tampa from Orlando.

7              MR. GAMMONS:  Yes, Your Honor.

8              THE COURT:  Do I have that right?

9              MR. MICHAELS:  Yes, Your Honor.

10             THE COURT:  So this Defendant would receive

11   the mail typically and he would sell and he would get

12   a thousand dollars per kilogram?

13             MR. GAMMONS:  I believe that's correct, Your

14   Honor.

15             THE COURT:  And holding inventory, from time

16   to time awaiting arrival at some point, either

17   Rodriguez or his agents?

18             MR. GAMMONS:  That's correct, Your Honor.

19             THE COURT:  Do I have that right,

20   Mr. Michaels?

21             MR. MICHAELS:  Yes, Your Honor.

22             THE COURT:  Just so it's clear, I make no

23   assumption about that, and I heard my own words, but I

24   make no assumption about that .40 caliber ammunition

25   that was present.  I don't attribute any weapon to him

1    or anything else, but I'm not giving that any weight.

2    The 9-millimeter, it is what it is, but, Mr. Michaels,

3    this Defendant actually came to the United States on

4    what day?  I think it's in the PSR somewhere.  Do you

5    know when he arrived here?  You mind if I ask him

6    directly?

7              MR. MICHAELS:  I'm sorry?

8              THE COURT:  Do you mind if I ask him directly?

9              MR. MICHAELS:  No, Your Honor, you may.

10             THE COURT:  Mr. Gomez, when did you actually

11   arrive in the United States?  What month or year?

12             THE DEFENDANT:  I don't recall the exact date,

13   but about two years ago.

14             THE COURT:  How long was it after Hurrican

15   Irma that you arrived?

16             THE DEFENDANT:  The month of October.

17             THE COURT:  Of '17, 2017?

18             THE DEFENDANT:  Correct.  Yes, sir, Your

19   Honor.

20             THE COURT:  I've asked this already, forgive

21   me.  Anything further from the United States?

22             MR. GAMMONS:  No, Your Honor.

23             THE COURT:  Any reason not to proceed to

24   sentencing?

25             MR. GAMMONS:  No.

1          THE COURT:  Anything further from the defense?

2          MR. MICHAELS:  No, Your Honor.

3          THE COURT:  Any reason not to proceed to

4    sentencing?

5          MR. MICHAELS:  No, Your Honor.

6          THE COURT:  Anything further you want to say,

7    Mr. Gomez?

8          THE DEFENDANT:  No.  That would be all, Your

9    Honor.

10          THE COURT:  Mr. Gammons, it strikes me that I

11    didn't give you a chance to respond to it.  It strikes

12    me that what else you might say here this Defendant is

13    less culpable than Mr. Rodriguez and deserves a lower

14    sentence than Mr. Rodriguez.  It clearly seems to me

15    that he's much less threatening; except for his

16    deliveries, more or less passive.  He's sort of a

17    pastoring, although he's making arrangements for

18    receipt, which is not good, but whatever his --

19    however measure, it's less than Rodriguez.  Would you

20    agree with that?

21          MR. GAMMONS:  I agree, Your Honor.  And as I'm

22    sure the Court knows, Mr. Rodriguez started off Total

23    Offense Level at 35 months but had the benefit of a 5K

24    which brought him down, but I agree as far as

25    culpability goes Mr. Gomez Nevarez is less culpable in

1    this conspiracy than Mr. Rodriguez.

2         THE COURT:  At the core of people here that by

3    nature of these conspiracies, it's really hard to

4    confidently distinguish them among -- you get a feel

5    for where they should be and what their relative

6    culpability was.  It's not always easy.

7         There are a couple of troubling things about

8    this.  I'm sure everybody spots them.  He relocated

9    from Puerto Rico and was pretty promptly involved in a

10   significant drug trafficking scheme which is a very

11   suggestive datum here.

12        All right.  Pursuant to the Sentencing Reform

13   Act of 1984 to the extent applicable after the United

14   States versus Booker, 18 U.S.C. 3553, Bryan Gomez

15   Nevarez is committed to the Bureau of Prisons for 135

16   months.  Upon release he must serve a five-year term

17   of supervised release during which you must comply

18   with the standard conditions adopted by the Court in

19   the Middle District of Florida.

20        Let me pause just a moment and ask the

21   questions of the probation officer.  I didn't really

22   note any protracted substance abuse here.  Did I

23   overlook it?

24        MR. THIESSEN:  Your Honor --

25        THE COURT:  Looks like --

```
 1          MR. THIESSEN:  He was smoking marijuana prior
 2    to coming here, on occasion.  He admitted that his
 3    alcohol consumption has negatively affected his
 4    relationship, so it has more to do with his alcohol.
 5          THE COURT:  That's what I thought.  All right.
 6    He does not appear to me to be a criminal among the
 7    universe of Defendants that we get, someone who we
 8    could commit these resources.  If during his
 9    supervision he needs substance abuse treatment, we can
10    add that on.
11          MR. THIESSEN:  Yes, Your Honor.  I believe
12    there are many community resources available.
13          THE COURT:  All right.  In addition to the
14    standard conditions, the Defendant must follow the
15    special condition that you not communicate or
16    otherwise interact with any member of the Latin Kings
17    gang or any other gang or organized criminal
18    association.  As a qualifying felon, the Defendant
19    must cooperate in the collection of his DNA as
20    directed by the probation officer.  I'll waive the
21    imposition of mandatory drug testing and waive
22    imposition of a fine.  There is, as Counsel suggested
23    a few moments ago, a preliminary order of forfeiture
24    at Document 360 of the docket.  United States is
25    entitled to have that incorporated into the order of
```

1    judgment and commitment as a final order of

2    forfeiture.  That's granted.  I'll levy a special

3    assessment of $100 which is due immediately.

4          In arriving at this sentence, I have

5    considered the policies and guidelines of the United

6    States Sentencing Commission.  I've considered the

7    advisory guideline range.  I have considered the

8    applicable statutory penalties and I have considered

9    to the best of my ability the factors related to

10   18 U.S.C. 3553(a).  I conclude that the announced

11   sentence is such but not greater than necessary to

12   comply with the statutory purposes of sentencing.

13         Let me make just a few comments about the

14   3553(a) factors.  First, the nature of this offense.

15   This was of a fairly aggressive and active network of

16   drug distribution from Puerto Rico through typically

17   Orlando and then elsewhere to retail sale in central

18   Florida and around the Middle District, particularly

19   Orlando and Tampa divisions of the Middle District.

20   The quantity of contraband that was moved is fairly

21   impressive.  The Defendant became engaged in this

22   almost immediately upon his arrival or shortly after

23   his arrival, soon after his arrival in the United

24   States.  Obviously these arrangements are dangerous to

25   participants combining drugs, cash and firearms.  This

1     is a serious and protracted and calculated and

2     conscious offense and the Defendant played a pivotal

3     role in this distribution scheme.  It's a very serious

4     offense and his guideline sentencing range is

5     indicative of that.

6          The Defendant himself offers in comparison to

7     the Defendants we tend to see in these offenses a

8     somewhat brighter prospect than typical, to say he has

9     a nice education.  He had parents that raised him to

10     the best of their ability.  He is in good health and

11     he has prospects, I believe.  His Counsel has pointed

12     out showing himself to be industrious.  He has also

13     showed himself to be industrious in the distribution

14     of cocaine.  He needs to command his industriousness

15     and direct it toward lawful and productive ends.

16          I must say, though, that if you have a

17     Defendant who has a very deprived and difficult and

18     regrettable background, addicts for parents, no

19     parents, no present parents, everybody has parents,

20     but none present, living in a hut, some of our

21     Colombian Defendants in boat cases that live in huts

22     without running water or electricity, then we're asked

23     to consider the deprivation of their background in

24     mitigation in their sentence.  If they are more middle

25     class, not necessarily the Defendant is middle class

1    by standards of the United States, but more toward

2    middle class status, you went to high school or worked

3    hard enough to get a high school education and the

4    like, well, we are told their prospects are bright and

5    they have supportive families.  So there's a strange

6    sense in which not having any family is a mitigating

7    factor and having a supportive family is a mitigating

8    factor.  I don't doubt that under the circumstance

9    each is a mitigating factor offered in part to

10   distinguish, it's always hard to distinguish

11   confidently when it is and when it isn't.

12       For whatever it's worth in this circumstance,

13   this young man strikes me as sincere in his

14   allocution, and his personal background factors are

15   somewhat in his favor even though he's been engaged in

16   this criminal conspiracy.  It's always necessary,

17   Mr. Gomez Nevarez, for a judge to consider the need to

18   command respect for the law and the need to have a

19   sentence that is sufficient to discourage others who

20   would consider the same conduct, to consider

21   protection of the community because, of course, I want

22   to protect the community, for instance, in which your

23   young daughter lives.  Some people are doing exactly

24   what you did, and when it gets down to it and

25   Mr. Gammons and the agents and others are charged to

1    find the people that are violating the law and

2    prosecute them, in this case you, in order to protect

3    people just like your daughter and others.

4          Also I'm required to consider among any other

5    pertinent factors, the list is not limited but it

6    includes avoiding any unwarranted disparity in

7    sentencing, in other words, not sentencing people who

8    have done the same thing and who are similar in their

9    circumstances to very different sentences for the same

10   offense, so I look at the sentences that are typically

11   given in all cases like this everywhere, and these

12   sentences are available in publications from the

13   United States Sentencing Commission.  I look also for

14   informational purposes at the sentence received by

15   your co-conspirators of which I have on this chart

16   right here and so does Counsel and the prosecutor, and

17   I try to arrive at a sentence that someone would look

18   at and say, well, in the statute given the offense and

19   given the other sentences that were levied, that seems

20   like a fair sentence.  That's what respect for the law

21   means, that the law was firm but not harsh.  And so

22   that's what, you know, the public wants the law to do

23   and the public will respect the law and the law

24   achieves that which is not always -- it's easy to say,

25   hard to actually do, but I'm convinced in your case

1    that's a sentence that's not as low as I can justify

2    given the offense and in the circumstances but I think

3    high enough to make an impression on you and others

4    that this conduct is utterly unacceptable and

5    dangerous and injurious to the community including the

6    community in which your family lives, so that is my

7    explanation of the imposed sentence.

8         Does either the United States or the defense

9    object to the sentence or the manner in which it was

10   announced?

11        MR. GAMMONS:  No objections from the United

12   States.

13        MR. MICHAELS:  No objections, Your Honor.

14        THE COURT:  All right.  Mr. Gomez Nevarez, I

15   must remand you to the Bureau of Prisons.  The statute

16   requires that I do so except in the most extraordinary

17   circumstances of hardship typically involving life and

18   death.  I had a circumstance where somebody was giving

19   bone marrow, somebody was in dialysis, things like

20   that that are life-threatening.  Other than that,

21   other than, the most severe and extraordinary hardship

22   the statute requires you be remanded, so I do remand

23   you to the custody of the United States Marshal to

24   await designation by the Bureau of Prisons.

25        Mr. Michaels, did you have a request with

1    respect to his residence while he's in the Bureau of

2    Prisons?

3            MR. MICHAELS:  Coleman, Your Honor.

4            THE COURT:  I recommend he be housed at

5    Coleman, Florida.  You'll get the benefit of learning

6    English of course which is available out there.  I

7    know there are other vocational opportunities at the

8    Bureau of Prisons, and I think you can be good for the

9    RDAP program and that is available to him.  In your --

10   Let's see.  I think we need to dismiss Counts One

11   through Five.  No.  He entered it -- he entered.

12           MR. GAMMONS:  I believe there's one

13   substantive count in relation to --

14           THE COURT:  It's Count Five.

15           MR. GAMMONS:  Yes, Your Honor.

16           THE COURT:  He pleaded to Count One, so Count

17   Five.

18           MR. GAMMONS:  Yes, Your Honor.

19           THE COURT:  Count Five of the indictment is

20   dismissed.  In your plea agreement, Mr. Gomez, you've

21   largely waived your right to appeal from this judgment

22   and the sentence unless I have sentenced you

23   unlawfully, which typically means above the statutory

24   maximum, above the applicable guidelines range or in

25   some unconstitutional manner.  I think I've done none

1    of that because I've sentenced you slightly below, you

2    know, slightly materially below the applicable

3    guidelines range, so I think you have no right of

4    appeal.  That, however, that is up to you and

5    Mr. Michaels to discuss.

6           To the extent that you have the right to

7    appeal, there's two things I'm going to tell you.

8    Number one, you always have a right to counsel on

9    direct appeal.  If you can't afford counsel, one would

10   be provided for you at public expense.  As it stands

11   now, Mr. Michaels must preserve and pursue any appeal

12   unless other Counsel is substituted for him by an

13   order of the Court.

14          Second, to begin an appeal you must file with

15   the clerk of this court a written notice of appeal.

16   Notice must be filed within 14 days and it must be

17   accompanied by a filing fee.  If you haven't enough

18   money to pay the fee, Mr. Michaels can ask the Court

19   to waive the fee, and if that's granted you can appeal

20   without paying.  Anything further from the United

21   States?

22          MR. GAMMONS:  No, Your Honor.

23          THE COURT:  Anything further, defense?

24          MR. MICHAELS:  No, Your Honor.

25          THE COURT:  All right.  Good luck to you.  We

1    are in adjournment.

2                              (Which were all the proceedings had

3                              in the above-entitled cause.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    UNITED STATES DISTRICT COURT's  )

2                                    )

3    MIDDLE DISTRICT OF FLORIDA      )

4

5              I, SHARON A. MILLER, Official Court Reporter

6    for the United States District Court, Middle District

7    of Florida, do hereby certify that pursuant to Section

8    753, Title 28, United States Code that the foregoing

9    is a true and correct transcript of the stenographic

10   notes taken by computer-aided transcription taken in

11   the above-entitled cause by the undersigned and that

12   the transcript format is in conformance with the

13   regulations of the Judicial conference of the United

14   States.

15   /S/Sharon A. Miller, CSR, RPR, CRR, FCRR

16   Official Court Reporter

17

18

19

20

21

22

23

24

25
```